# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **AMY FREESTONE** <br> 2233 Westmoreland Street <br> Falls Church, VA 22046 <br><br> Petitioner/Plaintiff <br><br> v. <br><br> **CACI, INC. – FEDERAL** <br> 12021 Sunset Hills Rd. <br> Reston, VA, 20190-5854 <br><br> Serve: Corporation Service Company <br> 1090 Vermont Ave. NW <br> Washington, DC 20005 <br><br> Respondent/Defendant. | Civil Action No.:  1:22-CV-1322 <br><br><br><br> JURY TRIAL DEMANDED <br><br><br><br><br><br> May 13, 2022 |

## PETITION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, COMPLAINT

Petitioner Amy Freestone ("Freestone") states the following in support of her Petition to Compel Arbitration, or in the alternative, Complaint against Defendant CACI, Inc. – Federal ("CACI"):

## PRELIMINARY STATEMENT

1. Freestone was a CACI employee for more than a decade.

2. Between 2014 and November 2017, Freestone worked for CACI on a contract supporting information technology ("IT") systems for the Department of Justice's ("DOJ") Executive Office for United States Attorneys ("EOUSA").

3. In the summer and fall of 2017, Freestone learned that Chris Jeffries, the DOJ official responsible for overseeing her team's work, was directing her team to ignore significant

vulnerabilities in the EOUSA's IT systems. On October 31, 2017, Freestone complained about the vulnerabilities to DOJ and CACI officials, and Jeffries publicly criticized Freestone. Freestone spoke with her CACI supervisor about being reassigned away from Jeffries.

4. The next day, CACI advised Freestone that Jeffries accepted her resignation. Freestone responded, clarifying that she was not resigning. At CACI's request, she continued working on the project for the next week. Nonetheless, on November 7, 2017, CACI terminated Freestone effective November 1.

5. CACI failed to pay Freestone wages for the work she performed between September 1 and September 7, 2017. CACI further unlawfully deducted wages from Freestone's final paycheck to repay an education loan.

6. CACI also violated the D.C. Wage Payment and Collection Law ("DCWPCL") by failing to pay Freestone for her last week of work and by falsely characterizing her separation as a resignation and therefore withholding owed wages to repay an education loan Freestone should not have been required to repay since she did not resign but was fired.

7. Pursuant to the parties' agreement to arbitrate, Freestone timely filed an arbitration demand against CACI with the American Arbitration Association ("AAA") on June 8, 2018. Freestone brought claims for whistleblower retaliation in violation of the National Defense Authorization Act ("NDAA"), 41 U.S.C. § 4712, and for unpaid wages, in violation of the D.C. Wage Payment and Collection Act ("DCWPCA"), D.C. Code §32-1301.

8. During discovery, the parties determined that most of the relevant information was held by a third party, DOJ. The parties agreed to stay the arbitration proceedings to allow time to obtain those documents.

9. However, CACI failed to pay AAA an annual fee to hold the case in abeyance. As a result,

AAA administratively closed the case on November 16, 2021.

10. Upon discovering that the case had been administratively closed, Freestone sought to reopen the claims. AAA determined that it would reopen the case only if both parties agreed. CACI did not agree to reopen the case, and AAA denied Freestone's request to reopen.

11. Freestone seeks an order to compel CACI to agree to reopen the AAA proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 4 and 206.

12. In the alternative, Freestone seeks to pursue her claims *de novo* in federal court.

## JURISDICTION & VENUE

13. This Court has personal jurisdiction over CACI pursuant to D.C. Code § 13-423 because CACI regularly transacts business in the District of Columbia and because the injuries alleged herein occurred in the District of Columbia.

14. This Court maintains federal question jurisdiction over this action pursuant to the FAA, 9 U.S.C. § 4; the NDAA, 41 U.S.C. § 4712; and 28 U.S.C. § 1331.

15. This Court maintains supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

16. Venue is proper pursuant to 28 U.S.C. § 1391 because Freestone worked in the District of Columbia, and the unlawful retaliation occurred in the District of Columbia.

## PARTIES

17. Freestone is a resident of Falls Church, Virginia. During the relevant time period, Freestone worked for CACI in the District of Columbia and was CACI's employee within the meaning of the NDAA and the DCWPCA.

18. CACI is incorporated in Delaware, and its principal place of business is located at 12021 Sunset Hills Road, Reston, VA, 20190-5854. During the relevant time period, CACI was a contractor within the meaning of the NDAA and was also Freestone's employer within the

meaning of the DCWPCA.

## FACTUAL BACKGROUND

### The parties agreed to arbitrate claims arising from Freestone's employment with CACI.

19. Freestone's employment with CACI was governed by an employment agreement (hereinafter, the "Agreement") between the parties.

20. The Agreement contains an arbitration provision:

    (a) Any controversy or claim arising out of, or relating to this Agreement, or its breach, or otherwise arising out of or relating to my recruitment by, my employment with, or the ending of my employment with, CACI (including any claim of discrimination whether based on race, color, religion, national origin, gender, age, sexual preference, disability, status as a disabled or Vietnam-era veteran, or any other legally protected status, alleged violation of the Uniformed services Employment and Reemployment Rights Act ("USERRA"), and whether based on federal or State law, or otherwise), will be settled first by resort to mediation by CACI's Ombudsman and then, if mediation fails to resolve the matter, by arbitration. PROVIDED, HOWEVER, that no claim under Title VII of the Civil Rights Act of 1964 or any tort related to or arising out of sexual assault or harassment, including assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention, shall be required to be arbitrated except by voluntary, mutual agreement of the parties upon the assertion of such a claim.

    (b) Any arbitration under this Agreement will be held in accordance with the American Arbitration Association's then current Employment Arbitration Rules, a copy of which is available from CACI Employee Services. The arbitrator, and only the arbitrator, will decide any and all disputes regarding whether a claim is arbitrable. In the event the arbitrator decides that any given matter is not arbitrable, the matter will be decided by a court of competent jurisdiction. Judgment upon award rendered by the arbitrator will be binding upon both parties and may be entered and enforced in any court of competent jurisdiction.

    (c) **I HEREBY EXPRESSLY, KNOWINGLY, INTENTIONALLY AND VOLUNTARILY WAIVE MY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CONTROVERSY OR CLAIM ARISING OUT OF, OR RELATING TO, THIS AGREEMENT, OR ITS BREACH, OR OTHERWISE ARISING OUT OF OR RELATING TO MY RECRUITMENT BY, MY EMPLOYMENT WITH, OR THE ENDING OF MY EMPLOYMENT WITH, CACI (INCLUDING, BUT NOT LIMITED TO, ANY CLAIM UNDER TITLE VII OF THE**

**CIVIL RIGHTS ACT OF 1964 ("TITLE VII"), THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA"); THE AMERICANS WITH DISABILITIES ACT ("ADA"); 42 U.S.C. § 1981; THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT ("USERRA"), THE FAMILY MEDICAL LEAVE ACT ("FMLA"); AND ANY OTHER CLAIM, WHETHER BASED ON FEDERAL OR STATE LAW, OR OTHERWISE).**

(d) CACI hereby waives its right to trial by jury with respect to any claim it may have against you relating to this Agreement or your employment with CACI.

### Freestone successfully performed her duties for EOUSA.

21. From 2014 until 2017, Freestone worked in Washington, DC, on CACI's contract with the EOUSA. She served as a Program Manager over a team of employees that managed the EOUSA's IT systems.

22. Freestone successfully performed her role at EOUSA. On annual performance evaluations, CACI supervisors rated her performance as "Meets Expectations," "Frequently Exceeds Expectations," and "Consistently Exceeds Expectations."

### Freestone reported vulnerabilities in DOJ IT systems.

23. In or around July 2017, Chris Jeffries became the DOJ Contract Office Representative ("COR") over Freestone's team.

24. Upon taking over the COR position, Jeffries began to direct Freestone's team to disregard efforts to remediate substantial information security issues at EOUSA.

25. Freestone warned Jeffries that failing to correct the IT issues left EOUSA's systems vulnerable to hacking and unauthorized modification.

26. These vulnerable systems included the case management systems used by U.S. Attorneys offices throughout the country, as well as the system that lists individuals who are prohibited from purchasing firearms because of a federal criminal conviction.

27. Given the vulnerabilities in the system, a hacker could access the system and delete records of criminal convictions.

28. After Jeffries dismissed her concerns, Freestone raised the issue in meetings with her team and other DOJ employees. Jeffries responded by publicly criticizing Freestone and treating her with hostility.

29. On October 31, 2017, Freestone met with Jeffries, Anita Hankerson of DOJ, and Jeff Davison of CACI to discuss the security vulnerabilities within the DOJ system and the system used to track security violations.

30. During the meeting, Freestone stated that EOUSA was not in compliance with IT security procedures. Jeffries became obviously agitated and inaccurately accused Freestone of failing to read her email and not understanding security processes.

31. After the meeting, Freestone spoke with CACI supervisor Jerome Williams about leaving the project because of Jeffries' hostility toward her and refusal to follow appropriate security practices.

32. Williams said he would meet with Jeffries the next day to attempt to resolve his apparent frustration with Freestone. Williams further directed Freestone not to return to the EOUSA offices until he had the opportunity to meet with Jeffries.

**CACI fired Freestone the day after she complained about failure to follow IT procedures.**

33. The next day, November 1, 2017, Williams met with Freestone and told her that Jeffries had "accepted her resignation."

34. Freestone stated that she had not resigned, but Williams requested and took her DOJ credentials.

35. On November 2 and 3, 2017, Freestone complained to Williams and CACI HR that she had

not resigned and asked that they investigate.

36. At Williams' request, Freestone continued working on the project from home through the following week.

37. However, on November 7, 2017, she received a call from CACI HR, confirming that CACI accepted her "resignation," effective November 1, 2017.

38. Again, Freestone explained that she had not resigned. The HR employee falsely claimed that Freestone left Williams a voicemail stating that she resigned, and that she also stated she resigned during her November 1, 2017, meeting with Williams.

### CACI wrongfully withheld Freestone's wages to repay an education loan.

39. CACI wrongfully deducted $8,658 from Freestone's last paycheck to repay an education loan. Pursuant to CACI policy, Freestone was required to pay back the loan if she resigned. Freestone should not have been required to pay back the loan because she did not resign.

40. CACI also failed to pay Freestone her salary for the work she performed between November 1 and November 7, 2017.

### CACI violated the Agreement by ignoring Freestone's mediation requests.

41. The Agreement required Freestone request mediation with CACI's Ombudsman prior to filing an arbitration demand.

42. Freestone repeatedly attempted to engage CACI's Ombudsman and request mediation, but CACI refused to respond.

43. CACI's Ombudsman ignored the complaint Freestone submitted *via* mail, as well as Freestone's electronic hotline filings between January 19, 2018, and the present.

### Freestone timely requested arbitration.

44. Freestone initiated arbitration on March 30, 2018. On June 8, 2018, Freestone filed a detailed

arbitration demand.

45. On July 8, 2018, Freestone filed a whistleblower retaliation complaint with the DOJ Office of Inspector General ("OIG"), relating to her termination.

46. On July 20, 2018, CACI filed a motion to dismiss Freestone's arbitration demand for failure to exhaust administrative remedies. In its motion, CACI argued that it needed additional information from the OIG investigation in order to defend against the arbitration demand.

47. The arbitrator denied the motion, and the parties commenced discovery. The parties exchanged discovery responses in June of 2019.

48. After reviewing their respective discovery responses, the parties conferred and agreed that much of the relevant information needed to prosecute and/or defend the case was in possession of third parties, including but not limited to DOJ.

49. DOJ OIG had not yet completed its investigation. However, OIG indicated that, at the conclusion of the investigation, it would provide CACI with a report that included findings and potentially relevant documents. However, because the AAA arbitrator did not have subpoena power, Freestone would need to file a request under the Freedom of Information Act ("FOIA") to obtain the report.

50. On November 1, 2019, the parties agreed to stay arbitration proceedings while they pursued the needed information from the DOJ.

**AAA administratively closed the case because CACI failed to pay the abeyance fee.**

51. On or around October 2020, AAA contacted the parties to request payment of a $300 administrative fee to continue holding the case in abeyance for an additional year (the "2020 Fee"). Without discussing the fee with Freestone, CACI paid the 2020 Fee, as required by the Agreement.

52. On October 1, 2021, AAA requested payment of the $300 annual fee to continue holding the case in abeyance (the "2021 Fee").

53. After receiving the letter, counsel for the parties spoke on the phone about methods to expedite the acquisition of the needed information, and as well as the possibility of resolving the case. CACI's counsel informed Freestone's counsel that, to his knowledge, CACI had not received OIG's investigative report but that he would contact his client to confirm.

54. At the end of the call, the parties agreed to explore the possibility of settlement and to otherwise seek to obtain the necessary information through FOIA or other means.

55. The parties did not discuss the payment of the 2021 Fee during the phone call. Based on the Agreement and CACI's automatic payment of the 2020 Fee, Freestone expected CACI to pay the 2021 Fee to continue to hold the case in abeyance while the parties sought the relevant information in the possession of DOJ.

56. CACI failed to pay the 2021 Fee within the specified period, and AAA administratively closed the case on November 1, 2021.

57. On March 15, 2022, after discovering the case had been administratively closed, Freestone sought to reopen the Arbitration. Freestone contacted AAA requesting the case be reopened and returned to abeyance while the parties awaited the third-party discovery responses. Freestone agreed to pay the fee if CACI would not.

58. On March 15, 2022, CACI responded, objecting to Freestone's request. CACI alleged that it conveyed to Freestone's former counsel that it would not pay the 2021 Fee.

59. Freestone's former counsel denies that the parties discussed who would or would not pay the 2021 Fee.

60. On March 17, 2022, AAA notified the parties that the matter would remain closed "absent

agreement of the parties."

## COUNT I

### Federal Arbitration Act, 9 U.S.C. §§ 4 and 206

61. Freestone repeats and realleges the allegations set forth above.

62. The parties entered into a binding, written agreement to arbitrate disputes arising from Freestone's employment with CACI.

63. Pursuant to the Agreement, Freestone filed a demand for arbitration.

64. AAA administratively closed the arbitration because CACI failed to pay the 2021 Fee.

65. AAA denied Freestone's request to reopen the arbitration because CACI objected to the request.

66. By reason of the foregoing, the Court should issue an order compelling CACI to agree to reopen the arbitration to allow the dispute to be decided on the merits and in accordance with the terms of the parties' Agreement.

67. In accordance with 9 U.S.C. § 4, Freestone provided written notice of this Petition to CACI's counsel on Friday, April 29, 2022.

## ALTERNATIVE COUNT I

### National Defense Authorization Act, 41 U.S.C. § 4712

68. Freestone repeats and realleges the allegations set forth above.

69. At all relevant times, Freestone was CACI's employee, and CACI was a government contractor within the meaning of the NDAA.

70. Freestone engaged in protected activity by disclosing to both federal employees responsible for contract oversight or management and CACI management employees, information that Freestone reasonably believed evidenced a substantial danger to public health or safety; gross

mismanagement of the contract; and violations of laws, rules, or regulations related to a federal contract.

71. CACI fired Freestone in retaliation for her protected activity, in violation of the NDAA.

72. Freestone timely filed a whistleblower retaliation complaint with the DOJ OIG on July 8, 2018.

73. The DOJ OIG did not respond or deny relief within two-hundred and ten (210) days of the date Freestone filed her complaint. Freestone has not agreed to an extension of time for OIG to complete its investigation, and any delay in issuing an order is not the result of any bad faith conduct on Freestone's part.

74. Pursuant to 41 U.S.C. § 4712(c)(2), Freestone filed her Arbitration Demand within two years of the expiration of the 210-day period after she filed her whistleblower complaint with OIG.

75. By and through CACI's actions, Freestone has suffered damages, including but not limited to, compensatory damages, lost wages, employment benefits, attorneys' fees, costs, and expenses.

## ALTERNATIVE COUNT II

### D.C. Wage Payment and Collection Act, D.C. Code §32-1301.

76. Freestone repeats and realleges the allegations set forth above.

77. CACI failed to provide Freestone with her last paycheck by the working day following her discharge, in violation of the DCWPCA. D.C. Code § 32-1303(1).

78. CACI pay Freestone's wages for work performed prior to her employment termination by wrongfully characterizing her discharge as a resignation.

79. By and through CACI's actions, Freestone has suffered damages, including but not limited to lost wages, treble damages, attorney's fees, and litigation costs.

## ALTERNATIVE COUNT III

### D.C. Wage Payment and Collection Act, D.C. Code §32-1301.

80. Freestone repeats and realleges the allegations set forth above.

81. CACI failed to pay Freestone wages for the work she performed during her last week of employment, in violation of the DCWPCA.

82. By and through CACI's actions, Freestone has suffered damages, including but not limited to lost wages, treble damages, attorney's fees, and litigation costs.

## ALTERNATIVE COUNT IV

### D.C. Wage Payment and Collection Act, D.C. Code §32-1301.

83. Freestone repeats and realleges the allegations set forth above.

84. CACI unlawfully deducted wages from Freestone's last paycheck to repay an education loan, in violation of the DCWPCA.

85. By and through CACI's actions, Freestone has suffered damages, including but not limited to lost wages, treble damages, attorney's fees, and litigation costs.

## PRAYER FOR RELIEF

WHEREFORE, Freestone respectfully requests that the Court:

1. Grant Freestone's Petition and issue an order compelling CACI to arbitrate all disputes with Freestone pursuant to 9 U.S.C. § 4 and 9 U.S.C. § 206; enforcing the parties' arbitration agreement; and award Freestone attorneys' fees, costs, and any other relief as is fair and just.

2. In the alternative, Freestone seeks to pursue her claims *de novo* before this Court. In that case, Freestone respectfully asks that the Court enter judgment against CACI on all Counts and award Freestone reinstatement, lost wages and benefits, treble damages, compensatory damages in an amount to be determined at trial, pre- and post-judgment interest, the amount

of tax on any award, attorney's fees, litigation costs, and any other relief as is fair and just.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues properly triable by a jury in this action.

Date: May 13, 2022

Respectfully submitted,

ALAN LESCHT AND ASSOCIATES, P.C.

/s/ Timothy M. Belknap

Timothy M. Belknap
DC Bar No. 1009732
Alan Lescht
DC Bar No. 441691
1825 K Street, NW, Suite 750
Washington, DC 20006
Tel. (202) 539-8157
Fax. (202) 463-6067
timothy.belknap@leschtlaw.com
alan.lescht@leschtlaw.com

*Counsel for Plaintiff*